## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CAPITAL SECURITY SYSTEMS,
INC.,

            **Plaintiff,**

    **v.**

NCR CORPORATION, SUNTRUST
BANKS, INC., and SUNTRUST
BANK,

          **Defendants.**

1:14-cv-1516-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiff Capital Security Systems, Inc.'s ("Capsec") Motion to Strike [181].

## I.    BACKGROUND

Capsec moves to strike certain invalidity arguments and factual information relied upon in NCR's Motion for Summary Judgment [162], arguing that the arguments and information were not timely disclosed.

On May 19, 2014, Capsec filed this action for patent infringement against Defendants NCR Corporation ("NCR"), SunTrust Banks, Inc., and SunTrust

Bank.[1]  The Patents-in-Suit[2] relate to advanced automated teller machines

("ATM") that automate the process for dispensing cash in exchange for deposited

checks.  NCR sells ATMs to financial institutions.  Capsec claims certain of

NCR's ATM models infringe its patents.

On August 10, 2014, the Court issued its scheduling order [22] ("Scheduling

Order").  The Scheduling Order required NCR to provide, on or before

August 29, 2014, its invalidity contentions and responses to Capsec's infringement

contentions.  (Scheduling Order at 2).  On August 29, 2014, NCR served its

Invalidity Contentions [181.3], and, on February 2015, NCR served its Amended

Invalidity Contentions [181.4].  The Amended Invalidity Contentions allege that

each of the Patents-in-Suit is invalid over one or more of four references, either by

anticipation or in combination with one or more of at least 8 other references for

each patent.  Each of the charts in NCR's Amended Invalidity Contentions maps a

primary reference to the claim elements and maps secondary references to certain

claim elements, and includes language stating that it would have been obvious to

combine the primary reference with the secondary references.  The Amended

---

[1]      The parties agreed to stay the case against SunTrust.  ([47], [54]).

[2]      United States Patent Nos. 5,897,625 (the "'625 Patent"); 7,653,600 (the
"'600 Patent"); 7,991,696 (the "'696 Patent"); and 8,121,948 (the "'948 Patent")
(collectively, "Patents-in-Suit").

Invalidity Contentions did not identify specific obviousness combinations or motivations to combine specific groups of references.

The Scheduling Order also required NCR to serve, on or before April 1, 2015, its initial expert report on invalidity. (Scheduling Order at 5). On April 1, 2015, NCR served the Expert Report of Anthony J. Stanners Regarding the Invalidity of Capital Security System, Inc.'s Patents-in-Suit (U.S. Patent Nos. 5,897,625; 7,653,600; 7,991,696; and 8,121,948) [181.5] (the "Initial Stanners Report"). The Initial Stanners Report identified five primary references that NCR contends anticipate or render obvious the majority of the claims of the Patents-in-Suit. These references are Johnston, Riach, Swinton, Sharman, and AT&T 5675. (See id.). For each of these five references, the Initial Stanners Report analyzed two-reference obviousness combinations with fourteen other references. (See, e.g., id. at 67-79).[3]

On June 28, 2016, the Court issued its claim construction order [133], [134] ("Claim Construction Order"). A primary claim construction issue before the

---

[3]     On January 26, 2015, NCR served its Supplemental Initial Disclosures [181.6]. On June 15, 2015, fact discovery closed. ([94] at 4).

Court was the meaning of the "valid" terms.[4]  During claim construction, NCR's

position was that the "valid" terms should be construed to require some

authentication of the signature.  NCR proposed the following construction:  "a

cursive signature confirmed as being the authentic signature of a qualified user."

([46.1] at 11).  The Court construed the "valid" terms as "a cursive signature

determined to be a signature with characteristics consistent with the cursive

signature of a qualified user."  ([134] at 2).

On September 28, 2016, NCR served its Second Amended Invalidity

Contentions [181.7] and the Supplemental Stanners Report of Anthony J. Stanners

Regarding the Invalidity of Capital Security Systems, Inc.'s Patents-In-Suit (U.S.

Patent Nos. 5,897,625; 7,653,600; 7,991,696; and 8,121,948) [181.8] (the

"Supplemental Stanners Report").  The Second Amended Invalidity Contentions

included six new prior art references:  LeClerc, Campbell, Chuang, Moore, Döhle,

and Graef (collectively, the "New References").  The Supplemental Stanners

Report also included the New References.  The Supplemental Stanners Report, like

the Initial Stanners Report, set forth obviousness combinations consisting of one of

---

[4]      "Valid signature," "valid," "validate the documents," and "validity of the
document."

the five primary references with a single secondary reference. The Supplemental

Stanners Report also stated:

> It is my opinion that Claim 15 of the '625 Patent is invalid for
> obviousness in view of U.S. Patent No. 5,673,333 (Johnston), or for
> obviousness over Johnston in view of one or more of Nohl, Anisimov,
> DiMauro, Houle, Sharman, Riach, Graf, LeClerc, Campbell, Chuang,
> Moore, Döhle, Graef, Swinton, Crabtree, Hain, and/or Milne.

(Id. at A-1-1).

On October 28, 2016, Capsec served the Rebuttal Expert Report of

Dr. Chandrajit Bajaj, Ph.D Regarding Validity of U.S. Patent Nos. 5,897,625;

7,653,600; 7,991,696; and 8,121,948 [181.9] (the "Bajaj Report"). The Bajaj

Report argued that certain references identified by NCR are not prior art and

identify claim limitations not disclosed in the cited references. The Bajaj Report

also argued that Stanners failed to conduct a proper obviousness analysis.

On November 7, 2016, NCR served its Reply Expert Report of

Anthony J. Stanners Regarding the Invalidity of Capital Security System, Inc.'s

Patents-In-Suit (U.S. Patent Nos. 5,897,625; 7,653,600; 7,991,696; and 8,121,948)

[181.10] (the "Stanners Reply Report"). The majority of the Stanners Reply

Report sets forth specific combinations of prior art references that allegedly render

the claims obvious. The following combinations were disclosed for the first time

in the Stanners Reply Report:

- Claim 15 of the '625 Patent

  1. Sharman in view of Crabtree, Hain, and DiMauro;
  2. Sharman in view of Crabtree, Hain, and LeClerc;
  3. Sharman in view of Crabtree, Hain, and Campbell;
  4. Sharman in view of Crabtree, Hain, and Döhle;
  5. Sharman in view of Graef, Hain, and DiMauro;
  6. Sharman in view of Graef, Hain, and LeClerc;
  7. Sharman in view of Graef, Hain, and Campbell;
  8. Sharman in view of Graef, Hain, and Döhle;
  9. AT&T 5675 in view of Hain and DiMauro;
  10. AT&T 5675 in view of Hain and LeClerc;
  11. AT&T 5675 in view of Hain and Campbell;
  12. AT&T 5675 in view of Hain and Döhle

- Claims 1-2, 6-8 of the '600 Patent; Claims 1, 2, 6, 9 of the '696 Patent; and Claims 1-3, 7-9 of the '948 Patent

  1. Sharman in view of Johnston and DiMauro
  2. Sharman in view of Johnston, DiMauro, and Anisimov
  3. Sharman in view of Johnston, DiMauro, Anisimov and Franklin
  4. Sharman in view of Johnston, LeClerc, and Anisimov
  5. Sharman in view of Johnston, LeClerc, Anisimov and Franklin
  6. Sharman in view of Johnston, Campbell, and Anisimov
  7. Sharman in view of Johnston, Campbell, Anisimov and Franklin
  8. Sharman in view of Johnston, Döhle, and Anisimov
  9. Sharman in view of Johnston, Döhle, Anisimov and Franklin
  10. Sharman in view of Johnston, LeClerc, and Houle
  11. Sharman in view of Johnston, LeClerc, Houle and Franklin
  12. Sharman in view of Johnston, Campbell, and Houle
  13. Sharman in view of Johnston, Campbell, Houle and Franklin
  14. Sharman in view of Johnston, Döhle, and Houle
  15. Sharman in view of Johnston, Döhle, Houle and Franklin
  16. Sharman in view of Campbell and DiMauro
  17. Sharman in view of Campbell, DiMauro, and Anisimov
  18. Sharman in view of Campbell, DiMauro, Anisimov and Franklin
  19. Sharman in view of Campbell, LeClerc, and Anisimov
  20. Sharman in view of Campbell, LeClerc, Anisimov and Franklin

21. Sharman in view of Campbell and Anisimov
22. Sharman in view of Campbell, Anisimov, and Franklin
23. Sharman in view of Campbell, Döhle, and Anisimov
24. Sharman in view of Campbell, Döhle, Anisimov and Franklin
25. Sharman in view of Campbell, LeClerc, and Houle
26. Sharman in view of Campbell, LeClerc, Houle, and Franklin
27. Sharman in view of Campbell and Houle
28. Sharman in view of Campbell, Houle, and Franklin
29. Sharman in view of Campbell, Döhle, and Houle
30. Sharman in view of Campbell, Döhle, and Houle and Franklin
31. AT&T 5675 in view of Johnston and DiMauro
32. AT&T 5675 in view of Johnston, DiMauro, and Anisimov
33. AT&T 5675 in view of Johnston, DiMauro, Anisimov and Franklin
34. AT&T 5675 in view of Johnston, LeClerc, and Anisimov
35. AT&T 5675 in view of Johnston, LeClerc, Anisimov and Franklin
36. AT&T 5675 in view of Johnston, Campbell, and Anisimov
37. AT&T 5675 in view of Johnston, Campbell, Anisimov and Franklin
38. AT&T 5675 in view of Johnston, Döhle, and Anisimov
39. AT&T 5675 in view of Johnston, Döhle, Anisimov and Franklin
40. AT&T 5675 in view of Johnston, LeClerc, and Houle
41. AT&T 5675 in view of Johnston, LeClerc, Houle and Franklin
42. AT&T 5675 in view of Johnston, Campbell, and Houle
43. AT&T 5675 in view of Johnston, Campbell, Houle and Franklin
44. AT&T 5675 in view of Johnston, Döhle, and Houle
45. AT&T 5675 in view of Johnston, Döhle, Houle and Franklin
46. AT&T 5675 in view of Campbell and DiMauro
47. AT&T 5675 in view of Campbell, DiMauro, and Anisimov
48. AT&T 5675 in view of Campbell, DiMauro, Anisimov. and Franklin
49. AT&T 5675 in view of Campbell, LeClerc, and Anisimov
50. AT&T 5675 in view of Campbell, LeClerc, Anisimov, and Franklin
51. AT&T 5675 in view of Campbell and Anisimov
52. AT&T 5675 in view of Campbell, Anisimov, and Franklin
53. AT&T 5675 in view of Campbell, Döhle, and Anisimov
54. AT&T 5675 in view of Campbell, Döhle, Anisimov, and Franklin
55. AT&T 5675 in view of Campbell, LeClerc, and Houle
56. AT&T 5675 in view of Campbell, LeClerc, Houle, and Franklin
57. AT&T 5675 in view of Campbell and Houle
58. AT&T 5675 in view of Campbell, Houle, and Franklin

59. AT&T 5675 in view of Campbell, Döhle, and Houle

On January 13, 2017, NCR filed its Motion for Summary Judgment of Invalidity [162] ("Motion for Summary Judgment"). Included with it is the Declaration of Anthony J. Stanners in Support of Defendants' Motion for Summary Judgment of Invalidity [162.45] (the "Stanners Declaration"). The Stanners Declaration includes the following combinations of prior art references first disclosed in the Stanners Reply Report:

- Claim 15 of the '625 Patent

  1. Sharman in view of Hain, Crabtree, and DiMauro
  2. AT&T 5675 in view of Hain and DiMauro

- Claims 1-2, 7, and 8 of the '600 Patent, and claims 1-3, 8, and 9 of the '948 Patent

  1. AT&T 5675 in view of Johnston and DiMauro
  2. AT&T 5675 in view of Campbell and DiMauro
  3. Sharman in view of Johnston and DiMauro
  4. Sharman in view of Campbell and DiMauro

- Claim 6 of the '600 Patent, claims 1, 6, and 9 of the '696 Patent, and claim 7 of the '948 Patent

  1. AT&T 5675 in view of Johnston, DiMauro, and Anisimov
  2. AT&T 5675 in view of Campbell, DiMauro, and Anisimov
  3. Sharman in view of Johnston, DiMauro, and Anisimov
  4. Sharman in view of Campbell, DiMauro, and Anisimov

- Claim 2 of the '696 Patent

  1. AT&T 5675 in view of Johnston, DiMauro, Anisimov and Franklin
  2. AT&T 5675 in view of Campbell, DiMauro, Anisimov and Franklin

3. Sharman in view of Johnston, DiMauro, Anisimov and Franklin
4. Sharman in view of Campbell, DiMauro, Anisimov and Franklin

NCR also submitted the Declaration of David Peter George Elwin [162.27] (the "Elwin Declaration").  NCR submitted the Elwin Declaration to authenticate certain documents relating to the AT&T 5675 reference, to establish the documents as business records under Fed. R. Evid. 803(6), and to establish that certain documents and the AT&T 5675 reference are prior art.  Elwin was not identified in NCR's Initial Disclosures or its Supplemental Initial Disclosures as a witness or a person with knowledge.

On March 10, 2017, Capsec filed its Motion to Strike.  Capsec contends that NCR's late disclosure of obviousness combinations, prior art references, and fact witness Elwin violates Rules 26(a) and (e) of the Federal Rules of Civil Procedure, Local Rule 26.1, Local Patent Rules 4.3 and 4.5, and the Court's Scheduling Order. Capsec argues NCR's conduct is not justified or harmless, and thus, under Rule 37(c)(1) of the Federal Rules of Civil Procedure, the late-disclosed information should be stricken from NCR's invalidity contentions, expert reports, and Motion for Summary Judgment.  Capsec also seeks attorneys' fees incurred as a result of NCR's untimely disclosures.

NCR contends its new prior art references are justified under Local Patent Rule 4.5(c), which allows a party to supplement its invalidity contentions with

additional disclosures in light of a claim construction ruling.  NCR claims it timely

disclosed the obviousness combinations on which its Motion for Summary

Judgment relies, arguing that its previous disclosures "reasonably" specified the

combinations.  NCR further argues Capsec was not prejudiced by any late

disclosure.  NCR concludes by arguing that the Elwin Declaration was submitted

in accordance with the Federal Rules of Civil Procedure, and that any late

disclosure was harmless.

## II.      DISCUSSION

### A.      Legal Standard on a Motion to Strike

A party is required to disclose discoverable information and the names of

individuals likely to have discoverable information that the party may use to

support its claims or defenses.  Fed. R. Civ. P. 26(a).  A party is required to

supplement incomplete Rule 26(a) disclosures.  Fed. R. Civ. P. 26(e)(1).  A party

that fails to comply with Rule 26(a) or (e) is precluded from using the undisclosed

witness or information "to supply evidence on a motion . . . unless the failure was

substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The burden of

establishing that a failure to disclose was substantially justified or is harmless rests

on the non-disclosing party.  Mitchell v. Ford Motor Co., 318 F. App'x 821, 825

(11th Cir. 2009).

B.     Disclosure of the New References

Capsec contends that NCR's disclosure of the New References is untimely. The Court agrees.

Local Patent Rule 4.5(c) provides:  "any amendment or modification of the Disclosures or Responses which a party believes are required in light of a [sic] either a claim construction ruling by the Court or a modification of an opposing party's Disclosure or Response shall be made within thirty (30) days of service of such ruling, Disclosure or Response."  L.P.R. 4.5(c), NDGa.  NCR claims it had a good-faith belief that the Court's Claim Construction Order required the New References.

Regarding the "valid" terms, NCR argues that the Court's construction required it to amend its invalidity contentions.  On November 7, 2015, and before the Markman hearing,  NCR originally proposed the following construction:  "a cursive signature confirmed as being the authentic signature of a qualified user."  ([46.1] at 11).  The Court construed the "valid" terms as "a cursive signature determined to be a signature with characteristics consistent with the cursive signature of a qualified user."  ([134] at 2).  NCR claims this construction required it to add the LeClerc, Campbell, Chuang, Moore, and Döhle references because

they teach, for example, "reading and verification of cursive signatures by comparison to the user's signature." ([189] at 4).

NCR's stated reason for adding these prior art references is not credible. The plain language of NCR's proposed construction of the "valid" terms contemplated a comparison of a cursive signature to the user's signature. NCR argued in its claim construction brief that one of ordinary skill in the art would have understood that validating a signature requires comparing the signature on the check to a known signature. (See [68] at 12 (ECF Pagination)). At the Markman hearing, NCR argued that validation "means some way to compare the signature on the check to some known signature[,]" and "I don't know how you detect check fraud unless you are looking at the signature and making sure that it is the signature of the person that it purports to be from, or at least trying." ([132] at 134:4-20). Against this backdrop, NCR's rationale for adding its prior art references because they are required by the Court's Claim Construction Order is discredited by the fact that NCR took the position, well before the Markman hearing, that validation required comparison of the cursive signature to the user's authentic signature.

NCR next argues that it was required to disclose the Graef reference based on the Court's construction of "cashed." Before the Markman hearing, NCR

proposed that the term "cashed" be construed as to "provid[e] cash in exchange for a check or money order and assuming the risk that the check is invalid." ([46.1] at 27). NCR emphasized at the <u>Markman</u> hearing that "[a]ll we are trying to get across is that the money that you are depositing, the check you are depositing, when you get the money out, it has to be the money from the check, not the money from your account." ([132] at 171-72). The Court, consistent with NCR's <u>Markman</u> hearing presentation, construed "cashed" as requiring that the ATM "provide[] cash, during a single ATM session, up to the amount of the instrument presented." ([133] at 34-35). The Court noted that the addition of "assum[e] the risk that the check is invalid" was "another means to communicate the same concept as above—that the cash corresponds to the instrument presented, rather than being derived from pre-existing funds." (<u>Id.</u> at 35). The Court found NCR's proposed language cumbersome and unnecessary in light of the Court's construction, and rejected it, but without rejecting NCR's interpretation of "cashed." (<u>Id.</u>).

NCR argues now that the Graef reference is necessary because the Court did not adopt its proposed construction that the bank "assum[e] the risk that the check is invalid." This argument is disingenuous. The Court effectively adopted NCR's proposed construction, albeit in abbreviated form. NCR's Amended Invalidity

13

Contentions also undermine its stated rationale, because NCR did not contend any of the references it cited for check cashing disclosed an "assuming the risk" limitation. (See [181.4] at 37-97). Indeed, NCR's claim charts and check cashing references do not address or disclose the "assuming the risk" limitation at all, supporting that NCR's check cashing references have nothing to do with the risk-assumption limitation.

NCR simply does not provide any plausible basis upon which it could claim to have "believe[d]" its New References were required in light of the Claim Construction Order. It is clear the New References were relevant to NCR's invalidity claims before the Court's Claim Construction Order, and NCR's late disclosure of the New References was not justified. Capsec's Motion to Strike the New References is granted.

C.    Disclosure of Obviousness Combinations

Local Patent Rule 4.3 provides that a "party opposing a claim of patent infringement . . . shall serve on all parties its Disclosure of Invalidity Contentions, at the time specified in these rules, which shall contain the following information:"

> (2) For each item of prior art disclosed, whether each item of prior art anticipates each asserted claim or renders it obvious. If the disclosing party contends that a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, shall be identified.

L.P.R. 4.3(a)(2), NDGa.  Capsec claims that, until its Stanners Reply Report, NCR withheld the specific obviousness combinations on which its Motion for Summary Judgment now relies.  Capsec claims these disclosures were late and improper.  NCR argues (1) it reasonably specified the obviousness combinations upon which it relies within the time limit allowed, and (2) Capsec did not suffer any prejudice as a result of the late disclosures.

       1.    <u>Whether NCR Timely Disclosed Its Obviousness Combinations</u>

NCR first argues that it disclosed its obviousness combinations in NCR's Second Amended Invalidity Contentions.  NCR does not identify where in its Second Amended Invalidity Contentions "each such combination, and the motivation to combine such items" is presented.  It claims, instead, that its invalidity disclosures "relied on a small set of primary references, and a few *buckets* of secondary references, each corresponding to one or more features missing from the primary references."  ([189] at 12 (emphasis in original)).  NCR relies on cases from the Northern District of California to support its argument that, when judging the sufficiency of a party's invalidity disclosures, a court should look to whether the disclosures, in context, "reasonably specif[y] the combination[s]" asserted.  (<u>Id.</u> at 13 (citing <u>Avago Techs. Gen. IP PTE Ltd. v. Elan</u>

Microelectronics Corp., No. 04-cv-5385-HRL, 2007 WL 951818, at *4 (N.D. Cal. Mar. 28, 2007))).

NCR's argument is unpersuasive, because it implicitly substitutes the plain language of the Local Patent Rules of this Court with the local patent rules of the Northern District of California. Our Local Patent Rules required NCR to identify, for its claim that a combination of prior art items renders a claim obvious, "*each such combination*, and the motivation to combine such items." L.P.R. 4.3(a)(2) (emphasis added). The Northern District of California only requires "an identification of any combinations of prior art showing obviousness." L.P.R. 3-3(b), NDCal.[5] This Court's Local Patent Rules "require the disclosing party to include very specific information." ChemFree Corp. v. J. Walter, Inc., 250 F.R.D. 570, 573 (N.D. Ga. 2007). "The Rules were adopted in order to 'facilitate the speedy, fair and efficient resolution of patent disputes.'" Id. (quoting L.P.R. 1.2(a)). "This purpose is undermined when parties are permitted to make initial

---

[5]    The Court notes that "decisions of the Northern District of California, on whose local patent rules this District's local patent rules are based, are persuasive authority on issues concerning this District's local patent rules." Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC, No. 1:11-cv-1634-HLM, 2015 WL 11142427, at *5 (N.D. Ga. May 21, 2015) (citing McKesson Info Solutions LLC v. Epic Sys. Corp., 242 F.R.D. 689, 695 n.1 (N.D. Ga. 2007)). The language of this Court's Local Patent Rule 4.3(a)(2) differs from the corresponding rule in the Northern District of California because the drafters of this Court's Local Patent Rules intended a different, more specific requirement.

'place holder' disclosures regarding infringement or invalidity, then make[] substantial changes or additions to those contentions immediately prior to or after the close of fact discovery." Id.

The Court finds NCR failed to comply with the plain language of Local Patent Rule 4.3(a)(2) by failing to disclose, until its Stanners Reply Report, "each [] combination" it claimed rendered the Patents-in-Suit obvious. See Pactiv Corp. v. Multisorb Techs., Inc., No. 10 C 461, 2013 WL 2384249, at *1 (N.D. Ill. May 29, 2013) (under substantially similar local rule, granting motion to strike portions of plaintiff's expert report where the report contained new invalidity arguments by relying on combinations and citations of prior art not disclosed previously in its invalidity contentions). Even if the Court found that NCR "reasonably specified" the combinations at issue, NCR failed to identify the motivation to combine each such combination of prior art, as required under Local Patent Rule 4.3(a)(2).

In addition, Federal Rule of Civil Procedure 26(a)(2)(B) requires that an expert disclose a complete statement of all opinions that the expert will express and the bases and reasons for those opinions. Fed. R. Civ. P. 26(a)(2)(B). Local Patent Rule 7.3 provides that the supplementation of expert reports is presumptively prejudicial and "shall not be allowed unless a) the tendering party shows cause that

the amendment or supplementation could not reasonably have been made earlier

and b) all reasonable steps are made to ameliorate the prejudice to the responding

party." L.P.R. 7.3, NDGa. "A [reply] expert report is not the proper 'place for

presenting new arguments, unless presenting those arguments is substantially

justified and causes no prejudice.'" STS Software Sys., Ltd. v. Witness Sys., Inc.,

No. CIV.A. 1:04-CV-2111-, 2008 WL 660325, at *2 (N.D. Ga. Mar. 6, 2008)

(quoting Baldwin Graphic Sys. Inc. v. Siebert, Inc., No. 03-7713, 2005 WL

1300763, at *2 (N.D. Ill Feb. 22, 2005)). NCR's new obviousness combinations,

disclosed for the first time in its Stanners Reply Report, are untimely and improper

for this additional reason.[6, 7]

---

[6]   NCR also argues that Capsec's objections are untimely. NCR does not
provide any binding authority to support its argument, and the Court rejects it.

[7]   In an apparent attempt to show that its late disclosures were substantially
justified, NCR argues that its Stanners Reply Report was necessary to remedy
confusion that arose from Dr. Bajaj's Rebuttal Report. It argues that Mr. Stanners
simply "chose from examples from among the obviousness combinations already
disclosed in his earlier reports." ([189] at 12). As explained above, the 71
previously-undisclosed obviousness combinations in the Stanners Reply Report
were not disclosed in Mr. Stanners's previous reports, and were not disclosed at all
by NCR until the Stanners Reply Report. NCR fails to identify how the addition of
71 previously-undisclosed obviousness combinations "responds to confusion
created by Dr. Bajaj's Rebuttal Report."

### 2. Whether NCR's Late Disclosures Prejudiced Capsec

NCR next argues that, even if its disclosure of obviousness combinations was late, "Capsec's motion to strike should fail because Capsec has shown no prejudice." ([189] at 12). That is not the test. NCR has the burden to show that a failure to disclose was substantially justified or is harmless. See Mitchell, 318 F. App'x at 825. NCR argues that, to the extent Capsec needed to respond to the Stanners Reply Report, it could have done so in Dr. Bajaj's declaration in support of Capsec's Motion for Summary Judgment. NCR argues that any remaining harm is of Capsec's own making, including because it waited several months to object to NCR's Stanners Reply Report and declined to depose Mr. Stanners regarding the new combinations because it doubted it "could have cured all of the prejudice by simply taking a deposition."

NCR's arguments are unpersuasive. This Court's Local Patent Rules "require the disclosing party to include very specific information." ChemFree, 250 F.R.D. at 573. "The Rules were adopted in order to 'facilitate the speedy, fair and efficient resolution of patent disputes.'" Id. (quoting L.P.R. 1.2(a)). "[I]nvalidity contentions serve a function far more important than the mere identity and disclosure of potentially relevant evidence: they explain exactly *how* the opposing party will use that evidence to invalidate the patents." Id. (emphasis in original).

NCR's arguments that Capsec could have responded to the new obviousness combinations in Dr. Bajaj's declaration, or that it could have mitigated any prejudice by deposing Mr. Stanners, are unpersuasive and fail to recognize the purposes of the Local Rules NCR was obligated to follow. "If the Court were to accept [NCR's] prejudice argument, parties would always be permitted to explain their invalidity contentions at the eleventh hour" whenever the opposing party had an opportunity to file a declaration in response to a summary judgment motion or to depose an expert. See Chemfree Corp. v. J. Walter, Inc., No. 1:04-cv-3711-JTC, 2008 WL 4845129, at *5 (N.D. Ga. Aug. 27, 2008). Capsec's Motion to Strike is granted with respect to NCR's new obviousness combinations.

D.     Elwin Declaration

Capsec next moves to strike the Elwin Declaration, arguing that Elwin was never identified as a witness, as required by Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure. Rule 26(a)(1)(A)(i) provides that a party must provide to other parties "the name . . . of each individual likely to have  discoverable information . . . that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). When a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that

information or that witness to supply evidence at trial, unless the failure was substantially justified or was harmless.  Fed. R. Civ. P. 37(c)(1).

NCR asserts that the primary purpose of Elwin's Declaration is to authenticate certain business records relating to the AT&T 5675 ATM, and that these business records were produced in this litigation over two years ago by both NCR and Capsec.  Capsec points out that Elwin not only authenticates documents, but also states that certain documents were "publicly available," "published," or "created" as of certain dates, and provides other opinions irrelevant to authentication.  Capsec argues it was prejudiced by NCR's failure to disclose Elwin as a witness, because it did not have an opportunity to depose him regarding his knowledge about the documents at issue.  It argues that Capsec's knowledge of the documents does not cure the harm caused by NCR's failure to disclose Elwin.

The Court finds that opinions offered in the Elwin Declaration that relate exclusively to the authentication of business records relating to the AT&T 5675 ATM are harmless.  Capsec does not appear to contest the facts within the Elwin Declaration and has known of the documents referenced in it for years.  There does not appear to be any actual dispute regarding the authenticity of the documents.  The Court finds, however, that, to the extent the Elwin Declaration offers facts and opinions beyond mere authentication of these business records, the Declaration is

prejudicial, including because Capsec did not have an opportunity to depose Elwin regarding these opinions. Specifically, the Court strikes Elwin's statements that certain documents were "publicly available," "published," or "created" on certain dates, that the AT&T 5675 ATM was on sale or in public use in the United States by certain dates, that certain documents and products reflect the functionality and operation of the 5675 ATM by certain dates, that certain products provide the interface through which applications communicate with the Document Processing Module, and that certain documents show sales or offers for sale. ([162.27] ¶¶ 5-7, 9-20, 24, 26).[8]

E.      Attorneys' Fees

Finally, Capsec seeks attorneys' fees it incurred as a result of NCR's untimely disclosures. Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that, "in addition to or instead of" the sanction of striking untimely-disclosed witnesses or information, "the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses,

---

[8]      In an attempt to cure the prejudice caused, NCR (1) offers to allow Capsec now to depose Elwin; and (2) submits a Second Declaration of David Konkolics, which contains substantially similar statements as the Elwin Declaration. The Court does not find either of these proposals acceptable. The Court will not, at this very late stage in the litigation, and particularly in light of the fact that NCR's Motion for Summary Judgment has been fully briefed, allow a reopening of discovery or additional declarations to be submitted.

including attorney's fees, caused by the failure[.]" Fed. R. Civ. P. 37(c)(1)(A).

The Court, in its discretion, declines to order payment of attorneys' fees.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Capital Security Systems, Inc.'s

Motion to Strike [181] is **GRANTED IN PART** and **DENIED IN PART**.

Capsec's Motion is **GRANTED**, and the Court strikes (1) the LeClerc, Campbell,

Chuang, Moore, Döhle, and Graef references in NCR's Supplemental Stanners

Report, Stanners Reply Report, Stanners Declaration, and Motion for Summary

Judgment of Invalidity; (2) the invalidity arguments based on obviousness

combinations first disclosed in the Stanners Reply Report from that report, the

Stanners Declaration, and the Motion for Summary Judgment of Invalidity; and

(3) the portions of the Elwin Declaration, and the Motion for Summary Judgment

of Invalidity sections relying upon it, in which Elwin states that certain documents

were "publicly available," "published," or "created" on certain dates, that the

AT&T 5675 ATM was on sale or in public use in the United States by certain

dates, that certain documents and products reflect the functionality and operation

of the 5675 ATM by certain dates, that certain products provide the interface

through which applications communicate with the Document Processing Module,

and that certain documents show sales or offers for sale.  ([162.27] ¶¶ 5-7, 9-20, 24, 26).  Capsec's Motion is **DENIED** with respect to (1) the remainder of the Elwin Declaration; and (2) Capsec's request for attorneys' fees.

**SO ORDERED** this 31st day of May, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE