# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CAPITAL SECURITY SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NCR CORPORATION, SUNTRUST BANKS, INC., and SUNTRUST BANK, <br><br> Defendants. | 1:14-cv-01516-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant NCR Corporation's ("NCR") Motion for Summary Judgment of Invalidity[162]. Also before the Court are the parties' Motions for Leave to File Matters Under Seal [161], [180].

**I.    BACKGROUND**

On May 19, 2014, Plaintiff Capital Security Systems, Inc. ("Capsec") filed this action for patent infringement against Defendants NCR, SunTrust Banks, Inc., and SunTrust Bank (collectively, "Defendants"), asserting infringement of United States Patent Nos. 5,897,625 ("the '625 Patent"); 7,653,600 ("the '600 Patent"); 7,991,696 ("the '696 Patent"); and 8,121,948 ("the '948 Patent") (collectively, "Patents-in-Suit"). (See Compl. [1]). On May 29, 2014, Defendants filed their

counterclaims [8], seeking a declaratory judgment that the Patents-in-Suit are invalid, unenforceable, or not infringed.

On June 18, 2015, recognizing that the claims against NCR are the predicate for the claims against the banks that use the ATMs with the technology at issue in this case, the Court stayed Capsec's claims against SunTrust Banks, Inc. and SunTrust Bank "pending the resolution of the dispute between Plaintiff and NCR." ([100]). For the same reasons, the Court also stayed the actions in <u>Capital Security Systems, Inc. v. Capital One, N.A.</u>, 1:14-cv-3370-WSD (the "3370 case"), and <u>Capital Security Systems, Inc. v. ABNB Federal Credit Union</u>, 1:14-cv-3371-WSD (the "3371 case"). The Court determined that allowing a resolution of Capsec's "infringement claims against NCR avoids potentially inconsistent results and otherwise promotes litigation efficiency," in this and other parallel litigation based on the Patents-in-Suit. (<u>Id.</u>).

On May 24, 2016, the Court held a <u>Markman</u> hearing, and, on June 28, 2016, issued its Opinion and Order construing certain disputed terms in the Patents-in-Suit. ([133] (the "Claim Construction Order")).

On October 24, 2016, Capsec filed its Motion for Entry of Judgment of Non-Infringement in favor of NCR to appeal the Court's Claim Construction Order. ([143]). Capsec also sought to dismiss NCR's invalidity and

2

unenforceability counterclaims. On December 9, 2016, the Court issued its order on Capsec's motion. The Court entered judgment of non-infringement of the Patents-in-Suit and denied Capsec's request to dismiss NCR's counterclaims.

On January 19, 2017, NCR filed its Motion for Summary Judgment of Invalidity. NCR argues Capsec's patents are invalid as obvious because they are merely collections of the ATM features already known to NCR and described in the prior art. NCR relies on the following combinations of prior art references:

- Claim 15 of the '625 Patent

    1. AT&T 5675 in view of Hain and DiMauro
    2. Sharman in view of Crabtree, Hain, and DiMauro

- Claims 1-2, 6-8 of the '600 Patent; Claims 1, 2, 6, 9 of the '696 Patent; Claims 1-3, 7-9 of the '948 Patent

    1. AT&T 5675 in view of Johnston, DiMauro, Anisimov, and Franklin
    2. AT&T 5675 in view of Campbell, DiMauro, Anisimov, and Franklin
    3. Sharman in view of Johnston, DiMauro, Anisimov, and Franklin
    4. Sharman in view of Campbell, DiMauro, Anisimov, or Franklin

NCR also argues that the following terms are invalid as indefinite: the term "apparent signature" in Claims 1 and 2 of the '948 Patent, Claim 1 of the '600 Patent, and Claim 1 of the '696 Patent, and the term "transactional operator" in Claim 15 of the '625 Patent.

On March 10, 2017, Capsec filed its Motion to Strike [181], seeking to strike certain invalidity arguments and factual information relied upon in NCR's

3

summary judgment motion, and the Elwin Declaration NCR relied upon in its motion.  In its May 31, 2017, Order [191] ("May 31st Order"), the Court granted in part Capsec's Motion to Strike.  The Court struck (1) the LeClerc, Campbell, Chuang, Moore, Döhle, and Graef references in NCR's Supplemental Stanners Report, Stanners Reply Report, Stanners Declaration, and Motion for Summary Judgment of Invalidity; (2) the invalidity arguments based on obviousness combinations first disclosed in the Stanners Reply Report from that report, the Stanners Declaration, and the Motion for Summary Judgment of Invalidity; and (3) the portions of the Elwin Declaration, and the Motion for Summary Judgment of Invalidity sections relying upon it, in which Elwin states that certain documents were "publicly available," "published," or "created" on certain dates, that the AT&T 5675 ATM was on sale or in public use in the United States by certain dates, that certain documents and products reflect the functionality and operation of the 5675 ATM by certain dates, that certain products provide the interface through which applications communicate with the Document Processing Module, and that certain documents show sales or offers for sale.  ([162.27] ¶¶ 5-7, 9-20, 24, 26).  The combinations of prior art references the Court struck included the following:

- Claim 15 of the '625 Patent

    1. Sharman in view of Hain, Crabtree, and DiMauro
    2. AT&T 5675 in view of Hain and DiMauro

- Claims 1-2, 7, and 8 of the '600 Patent, and claims 1-3, 8, and 9 of the '948 Patent

    1. AT&T 5675 in view of Johnston and DiMauro
    2. AT&T 5675 in view of Campbell and DiMauro
    3. Sharman in view of Johnston and DiMauro
    4. Sharman in view of Campbell and DiMauro

- Claim 6 of the '600 Patent, claims 1, 6, and 9 of the '696 Patent, and claim 7 of the '948 Patent

    1. AT&T 5675 in view of Johnston, DiMauro, and Anisimov
    2. AT&T 5675 in view of Campbell, DiMauro, and Anisimov
    3. Sharman in view of Johnston, DiMauro, and Anisimov
    4. Sharman in view of Campbell, DiMauro, and Anisimov

- Claim 2 of the '696 Patent

    1. AT&T 5675 in view of Johnston, DiMauro, Anisimov and Franklin
    2. AT&T 5675 in view of Campbell, DiMauro, Anisimov and Franklin
    3. Sharman in view of Johnston, DiMauro, Anisimov and Franklin
    4. Sharman in view of Campbell, DiMauro, Anisimov and Franklin

(See May 31st Order at 8-9).

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

5

of law.  See Fed. R. Civ. P. 56.  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  The party opposing summary judgment "'must do more than simply show that there is some

6

metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

    B.    <u>Analysis</u>

NCR argues Capsec's patents are invalid as obvious based upon several combinations of prior art references. In its May 31st Order, the Court struck, among other things, the invalidity arguments based on obviousness combinations first disclosed in the Stanners Reply Report from that report, the Stanners Declaration, and the Motion for Summary Judgment of Invalidity. These obviousness combinations include all of the combinations of prior art references NCR relies on to support its invalidity arguments in this Motion. Because the Court struck the combinations of prior art references upon which NCR relies,

NCR's Motion is denied with respect to its claim that the Patents-in-Suit are invalid as obvious.[1]

NCR next argues that the terms "apparent signature" and "transactional operator" are indefinite. A patent is presumed to be valid and "a defendant bears the burden of proving invalidity by clear and convincing evidence[.]" Shire LLC v. Amneal Pharm., LLC, 802 F.3d 1301, 1306 (Fed. Cir. 2015) (citation omitted). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014). "What the statute requires . . . 'is that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty.'" Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1370 (Fed. Cir. 2014) (quoting Nautilus, 134 S. Ct. at 2129). "The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art." Id. at 1371. "Although absolute or mathematical precision is not required, it is not enough . . . to identify

---

[1] Because NCR's Motion is denied on this ground, the Court does not determine whether the AT&T 5675 is prior art and does not address any secondary considerations.

8

some standard for measuring the scope of the phrase." Id. at 1370-71 (citation omitted). "The definiteness standard 'must allow for a modicum of uncertainty' to provide incentives for innovation, but must also require 'clear notice of what is claimed, thereby appris[ing] the public of what is still open to them.'" Id. at 1370 (quoting Nautilus, 134 S. Ct. at 2128-29).

### A. "Ascertain(s) an Apparent Signature"

NCR contends the term "ascertain(s) an apparent signature" in Claims 1 and 2 of the '948 Patent, Claim 1 of the '600 Patent, and Claim 1 of the '696 Patent is indefinite under 35 U.S.C. § 112(b). NCR previously raised this argument at the claim construction phase. In its Claim Construction Order, the Court found that a finding of indefiniteness was premature because NCR failed to provide any expert testimony, prior art, or other evidence to show that a person skilled in the art would be unable to ascertain, with reasonable certainty, the scope of the invention. The Court construed the term as follows: "to discover the presence of a person's cursive signature in the signature field." (Claim Construction Order at 15). NCR now renews its indefiniteness argument, and, in support of it, submits the expert opinion of Dr. Chatterjee [162.51] ("Chatterjee Report").

Dr. Chatterjee opines that "ascertain(s) an apparent signature," read in light of the specification and prosecution history, fails to inform, with reasonable

9

certainty, those skilled in the art about the scope of the claimed invention. He states that the term fails to inform what is meant by "apparent signature," including because a person of ordinary skill in the art would not be able to decide if the claim was narrowed to: (1) determining if anything in the way of a mark was present in the signature field, useful or otherwise; (2) distinguishing a mark resembling legible text from a mark never intended to be a signature, such as a scratch or smudge mark; (3) determining if the scanned image field corresponds to a handwritten cursive signature versus an otherwise legitimate block letter printed name; or (4) determining if the signature is forged. (Chatterjee Report ¶¶ 51, 66). He opines that the term has no ordinary and customary meaning, and that he has never used or heard the term used to describe the operations of a computer analyzing data such as a scanned image. (Id. ¶¶ 55-56). Dr. Chatterjee notes that the specification does not disclose any meaningful understanding of the term, and that the specification and file histories do not disclose any algorithms corresponding to the term. He notes that the specification recites operations involving an actual signature, but does not discuss a process to differentiate an "apparent signature" from an actual signature. (Id. ¶¶ 58-59, 61). He states that the Court's construction fails to identify either the aspect of the signature that

"apparent" modifies, or a standard by which that aspect could be measured. (Id. ¶ 67). Dr. Chatterjee concludes that the term is indefinite.

Capsec's expert, Dr. Bajaj, opines in his Declaration [178.2] ("Bajaj Decl.") that one of ordinary skill would understand the scope of the limitation, consistent with the Court's construction, to discover the presence of a person's cursive signature in the signature field. (Bajaj Decl. ¶ 54). He concludes that the limitation is met when software determines if a cursive signature of a person is present in the signature field and that it does not require any determination as to whether the signature satisfies any specific criteria, or matches any signatures on file. (Id.). Dr. Bajaj does not support his opinion with any reasoning or evidence. (See id.; [162.23] ("Bajaj Report") ¶¶ 2056-61). Instead, he notes that the Court construed the term and "determined that this limitation was not indefinite," and offers a conclusory statement that one of ordinary skill in the art would understand the scope of the limitation to be the Court's construction of the term. (Bajaj Report ¶ 2059).

Dr. Bajaj's opinion misunderstands the Court's Claim Construction Order. The Court did not find the term was definite. The Court explicitly stated it would construe the claimed ambiguous terms, but that any construction was "without prejudice to [NCR's] ability to challenge the validity of these terms for

11

indefiniteness at the summary judgment stage." (Claim Construction Order at 12 (quoting CSB-Sys. Int'l, Inc. v. SAP Am., Inc., No. 10-cv-2156, 2011 WL 3240838, at *18 (E.D. Pa. July 28, 2011)); see also Union Pac. Res. Co. v. Chesapeake Energy Corp., 236 F.3d 684, 688-89, 692 (Fed. Cir. 2001) (a claim term may still be indefinite even if construed).

Capsec argues that Dr. Chatterjee's opinion does not support that the term is indefinite. It points to Dr. Chatterjee's opinion that one of ordinary skill in the art would not be able to decide "if the claim was narrowed to" one of four examples, and argues that the fact that a claim is broad does mean it is indefinite. ([178] at 28). Capsec misunderstands Dr. Chatterjee's opinion. Dr. Chatterjee's opinion is not that the term is broad enough to encompass the four possibilities he set forth, but that a skilled artisan would not be able to decide whether the term encompasses all four examples or some subset of them.

Finally, Capsec argues that summary judgment is inappropriate because "[t]he factual question of what a person having ordinary skill in the art would understand 'apparent signature' to mean from reading the patent and claims is in dispute." ([178] at 30). In Teva Pharms. USA, Inc. v. Sandoz, Inc., 789 F.3d 1335 (Fed. Cir. 2015), the Federal Circuit stated that indefiniteness is a question of law. Id. at 1341. "A party cannot transform into a factual matter the internal coherence

12

and context assessment of the patent simply by having an expert offer an opinion on it[, because t]he internal coherence and context assessment of a patent, and whether it conveys claim meaning with reasonable certainty, are questions of law." Id. at 1342. "But the district court's underlying determination, based on extrinsic evidence, of what a person of ordinary skill would understand [the term] to mean in different contexts is a question of fact." Eli Lilly and Co. v. Teva Parenteral Meds., Inc., 845 F.3d 1357, 1371 (Fed. Cir. 2017) (citing Teva Pharms., 789 F.3d at 1342 ("Understandings that lie outside the patent documents about the meaning of terms to one of skill in the art or the science or state of the knowledge of one of skill in the art are factual issues.")).

The Court finds that NCR has shown by clear and convincing evidence that a skilled artisan in light of the specification would not have recognized the scope of the claimed invention with reasonable certainty. A skilled artisan would not have been able to decide amongst four different plausible meanings of "apparent signature": (1) determining if anything in the way of a mark was present in the signature field, useful or otherwise; (2) distinguishing a mark resembling legible text from a mark never intended to be a signature, such as a scratch or smudge mark; (3) determining if the scanned image field corresponds to a handwritten cursive signature versus an otherwise legitimate block letter printed name; or

(4) determining if the signature is forged. The specifications do not shed light on the meaning of "apparent signature." The term does not appear in the specifications. The specifications instead discuss "validating the presence of a signature," ('600 Patent, abstract), sending the bank "a validation that a signature is present," ('600 Patent 4:39-40), and describe "[a]nother significant document validation procedure with respect to checks is a determination that a signature is present. That is, the check is signed at the signature line," (Id. 2:9-11). The specifications also discuss comparing signatures to stored reference signatures to detect forgeries. (Id. 2:11-20). The specifications do not, however, address the differences between an "apparent signature' and an actual signature that is present and validated.

Based on the broad and ambiguous language of "apparent signature," and the lack of direction in the specification as to its meaning, the Court rejects Dr. Bajaj's conclusory assertion that a person of ordinary skill would understand the term as the Court construed it. See Butamax Advanced Biofuels LLC v. Gevo, Inc., 117 F. Supp. 3d 632, 641-42 (D. Del. 2015), reconsideration denied, No. 12-1036-SLR, 2015 WL 4919975 (D. Del. Aug. 18, 2015); see also Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1329 (Fed. Cir. 2001) ("Broad conclusory statements offered by [] experts are not evidence and are

not sufficient to establish a genuine issue of material fact."). A person of ordinary skill in the art, informed by the specification and the prosecution history, would not be apprised with reasonable certainty about the scope of the invention. The term "apparent signature" in Claims 1 and 2 of the '948 Patent, Claim 1 of the '600 Patent, and Claim 1 of the '696 patent is indefinite under 35 U.S.C. § 112(b).

B. "Transactional Operator"

NCR next argues that the term "transactional operator" in Claim 15 of the '625 Patent is indefinite. The term appears in Claim 15 as follows:

> 15. An automated banking system for receiving cash from a user and for dispensing cash to a user comprising:
>
> an automated machine having a card receiver for receiving a card which identifies a user as being qualified to use the machine;
>
> a document receiver for receiving a document to be cashed;
>
> a reader for reading the document for the amount and for a valid signature of the user if cash is to be dispensed to the user;
>
> a cash dispenser in the automated machine for dispensing cash to the user operable upon an accepted reading by the reader;
>
> a cash receiver for receiving cash and for analyzing the amount of cash received from the user;
>
> a cash storage in the machine for receiving the cash being deposited by the user;
>
> and a **transactional operator** for operation by the user to perform a transaction upon deposit of sufficient cash by user for the requested transaction.

15

'625 Patent Claim 15 (emphasis added). The Court adopted the construction "[a] computer within an automated banking system that, after deposit of sufficient cash, permits the user to perform the requested transaction."

Dr. Chatterjee notes that, while Claim 15 recites a "transaction upon deposit of sufficient cash" that is in response to a "requested transaction," the only claimed transaction is that of dependent claim 17:

> 17. A system in accordance with claim 15 wherein:
>
> **the transaction is payment of a bill from a provider**;
>
> a bill reader reads the provider's account number and the user's identification from the bill; and
>
> a transfer of funds is made by modem through a network to an account of the provider.

'625 Patent 24:58-64 (emphasis added). He argues that, because the term "transactional operator" is recited as an operator "for operation by the user," the question is whether the claimed "operator" is (1) a user interface capability allowing a user choices; (2) an internal computer component like software executing an algorithm; or (3) a computer component that performs the task of "a bill reader reads the provider's account number and the user's identification from the bill" as in the transaction in Claim 17. Dr. Chatterjee opines further that one of ordinary skill could conclude that the term could refer to a mechanical switch or push button to be "operated," noting that the '625 Patent identifies various input

16

devices such as user keyboards, touch screen, and auxiliary user input devices. (Chatterjee Report ¶ 74).

Dr. Chatterjee also notes that the operator is conditional upon the deposit of sufficient cash. He argues that one of ordinary skill would not be able to determine whether, if satisfied by an input device, the device acting as an "operator' becomes available only after satisfying the sufficient cash condition. He also notes that claim 39 recites "displaying to the user a list of selected, transactional options including withdrawal of cash option," and argues that this "leaves open the question as to how the displayed list of 'transaction options' relate to a 'transactional operator' of claim 15." (Id. ¶ 76).

Dr. Chatterjee notes that the term "transactional operator" is not referred to in the specification, and appears only once in the '625 Patent—in Claim 15. He argues that "operator" has wide ranging meanings, from mathematical operators to human operators, and the specification does not clarify this ambiguity. (See id. ¶ 80).

Dr. Bajaj argues that Dr. Chatterjee erred in his comparison of Claims 15 and 17, which are apparatus claims containing the structural "transactional operator" term, with a method step in Claim 39. He argues that "[t]his reasoning makes no sense." (Bajaj Report ¶ 2065). He concludes that one of ordinary skill

17

in the art would understand that a computer included in an automated banking system is one that, after deposit of sufficient cash, permits the user to perform the requested transaction. For example, one of ordinary skill in the art would understand that operations of an automated banking system would include options such as "withdraw," "deposit," and "cash check" as described in Figure 9. He further explains that a skilled artisan would understand whether an automated banking system includes a computer configured to perform these tasks after deposit of sufficient cash. (Id. ¶ 2068).

First, Dr. Bajaj's argument that it "makes no sense" to compare Claims 15 and 17 to Claim 39 is unfounded. Dr. Bajaj does not provide a reason why it "makes no sense" to compare terms in an apparatus claim with terms in a method claim under these circumstances. Even if it the comparison is inappropriate, the question remains whether the claimed operator is a user interface, an internal computer component, or a computer component that performs the bill reader task in Claim 17.

Second, as it argued with respect to the apparent signature term, Capsec argues that the three possible interpretations of "transactional operator" show only that the claim is broad, not that it is indefinite. Again, Dr. Chatterjee's opinion is not that the term is broad enough to encompass the three possibilities set forth, but

18

that a skilled artisan would not be able to decide whether the term encompasses all three examples or some subset of them. The Court agrees. The meaning of "transactional operator" is ambiguous, and the specification does not provide any guidance as to its meaning. Dr. Chatterjee does not offer any reasoning or evidence to support his opinion that one of ordinary skill in the art would understand that a computer included in an automated banking system is one that, after deposit of sufficient cash, permits the user to perform the requested transaction. See Telemac, 247 F.3d at 1329 ("Broad conclusory statements offered by [] experts are not evidence and are not sufficient to establish a genuine issue of material fact."). A person of ordinary skill in the art, informed by the specification and the prosecution history, would not be apprised with reasonable certainty about the scope of the invention. The term "transactional operator" in Claim 15 of the '625 Patent is indefinite under 35 U.S.C. § 112(b).[2]

---

[2] In connection with the Motion for Summary Judgment of Invalidity, the parties filed motions for leave to file matters under seal [161], [180]. Having reviewed the documents the parties seek to file under seal, the Court finds the documents contain sensitive information, and the motions are granted.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant NCR Corporation's Motion for Summary Judgment of Invalidity[162] is **DENIED IN PART** and **GRANTED IN PART**. NCR's Motion is **DENIED** with respect to its obviousness arguments. NCR's Motion is **GRANTED** with respect to its indefiniteness arguments. The term "apparent signature" in Claims 1 and 2 of the '948 Patent, Claim 1 of the '600 Patent, and Claim 1 of the '696 Patent, and the term "transactional operator" in Claim 15 of the '625 Patent are indefinite under 35 U.S.C. § 112(b).

**IT IS FURTHER ORDERED** that the parties' Motions for Leave to File Matters Under Seal [161], [180] are **GRANTED**.

**SO ORDERED** this 30th day of June, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE