IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAPITAL SECURITY SYSTEMS,
INC.,

        Plaintiff,

  v.                                1:14-cv-1516-WSD

NCR CORPORATION, SUNTRUST
BANKS, INC., and SUNTRUST
BANK,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendant NCR Corporation's ("NCR") Motion for Attorney's Fees [152] and Motion for Additional Attorney's Fees and Costs [198] (collectively, the "Motions"). Also before the Court is NCR's Motion for Leave to File Matters Under Seal [200] ("Motion to Seal").[1]

---

[1] NCR seeks to file under seal a document summarizing billing invoices [199] submitted in connection with its Motions for Attorney's Fees. NCR argues in its Motion to Seal that the document it seeks to file under seal contains information that has been designated by it as "Confidential" or "Attorneys' Eyes Only" under Paragraph 14 of the Protective Order [29] in this action. ([200] at 1-2). The Motion to Seal is unopposed. Upon review of the document, the Court finds the document lacks the designations "Confidential" or "Attorneys' Eyes Only." The Court finds, however, that it has permitted the sealing of a similar document in the past—albeit with the appropriate designation affixed to the top of the document.

## I. BACKGROUND

On May 19, 2014, Plaintiff Capital Security Systems, Inc. ("Capsec") filed this action for patent infringement against Defendants NCR, SunTrust Banks, Inc., and SunTrust Bank (collectively, "Defendants"), asserting infringement of United States Patent Nos. 5,897,625 ("the '625 Patent"); 7,653,600 ("the '600 Patent"); 7,991,696 ("the '696 Patent"); and 8,121,948 ("the '948 Patent") (collectively, "Patents-in-Suit"). (See Compl. [1]). On May 29, 2014, Defendants filed their counterclaims [8], seeking a declaratory judgment that the Patents-in-Suit are invalid, unenforceable, or not infringed.

On May 24, 2016, the Court held a Markman hearing, and, on

---

(See, e.g., August 9, 2017, Order [201]). The Court therefore finds it appropriate to seal the document, and grants NCR's Motion to Seal. Even if the Protective Order were not in place, the Court would grant NCR's Motion to Seal. Under federal common law, there is a presumption that judicial records are public documents. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); Chicago Tribune Co. v. Bridgestone/Firestone, 263 F.3d 1304, 1311 (11th Cir. 2001). The public's common-law right of access is not absolute, however, and "may be overcome by a showing of good cause." Romero v. Drummond Co., 480 F.3d 1234, 1245 (11th Cir. 2007). "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question." Id. at 1246 (quoting Chicago Tribune, 263 F.3d at 1315). Courts deciding whether to seal documents must balance "the public interest in accessing court documents against a party's interest in keeping the information confidential." Id. Here, even if the Protective Order were not in place, the Court, having reviewed the document, finds the it contains sensitive confidential information and NCR has shown good cause to support its Motion to Seal.

June 28, 2016, the Court issued an order [133] (the "Claim Construction Order") construing certain disputed terms in the Patents-in-Suit. On October 24, 2016, Capsec filed its Motion for Entry of Judgment of Non-Infringement in favor of NCR so that Capsec could appeal the Court's Claim Construction Order. ([143]). Capsec also sought to dismiss NCR's invalidity and unenforceability counterclaims. On December 9, 2016, the Court issued its order on Capsec's motion. ([145]). The Court entered judgment for NCR of non-infringement of the Patents-in-Suit and held that its order constituted a final, appealable decision of the Court within the meaning of Rule 54(b) of the Federal Rules of Civil Procedure. The Court also denied Capsec's request to dismiss NCR's counterclaims for invalidity and unenforceability. On December 20, 2016, Capsec filed its notice of appeal with the Federal Circuit challenging the Court's Claim Construction Order. The appeal is currently pending.

On December 22, 2016, NCR filed its Motion for Attorney's Fees seeking an award of NCR's "full fees" incurred for the period of June 2014 to November 2016. ([152] at 25; see also [170]; [171]; [182]). NCR seeks attorney's fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927. ([152] at 25). On January 19, 2017, Plaintiff filed its Opposition to Defendant's Motion for Attorney's Fees [164] ("Response to Motion for Attorney's Fees").

3

The parties engaged in additional motion practice following Capsec's appeal of the Court's Claim Construction Order, including NCR's Motion for Summary Judgment of Invalidity [162] filed on January 13, 2017.  On June 30, 2017, the Court granted NCR's Motion for Summary Judgment of Invalidity with respect to its indefiniteness arguments, issuing an order finding the claim term "apparent signature" and "transactional operator" to be indefinite.  ([192]) (the "Invalidity Order").  On July 28, 2017, the Court entered a Consent Judgment of Invalidity [193] so that Capsec could appeal the Court's Invalidity Order in concert with its already filed appeal of the Court's Claim Construction Order.  The Consent Judgment of Invalidity granted a judgment of invalidity of the Patents-in-Suit against Capsec and for NCR.  ([193] at 3).  The same day, the Clerk entered a docket entry terminating the case.

On August 8, 2017, NCR filed its Motion for Additional Attorney's Fees seeking "additional attorney's fees and costs that NCR has incurred during this district court litigation, from December 2016 through July 2017."  ([198] at 2).  On September 1, 2017, Plaintiff filed its Response and Objections to Defendant NCR Corporation's Motion to Include Additional Attorney's Fees and Costs [204] ("Response to Motion for Additional Attorney's Fees").

## II. DISCUSSION

### A. Attorney's Fees Pursuant to 35 U.S.C. § 285

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Determining whether a party should be afforded attorney's fees under 35 U.S.C. § 285 requires a two-step inquiry: (1) the court must determine whether the case is "exceptional" and (2) where the court finds the case is "exceptional," the court must determine whether the requested attorney's fees are appropriate. Wedgetail Ltd. V. Huddleston Deluxe, Inc., 576 F.3d 1302, 1304 (Fed. Cir. 2009). "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S.Ct. 1749, 1756 (U.S. 2014); see also Crossfit, Inc. v. Quinnie, 232 F. Supp. 3d 1295, 1314. Although the Federal Circuit once required a plaintiff to prove that a case was exceptional by clear and convincing evidence, the Supreme Court in Octane Fitness rejected "such a high standard of proof." Octane Fitness, LLC, 134 S.Ct. 1749, 1758. Instead, it appears now that a plaintiff need only meet the preponderance of the evidence standard in demonstrating the exceptionality of a case. Id. ("Section 285 demands a simple

discretionary inquiry; it imposes no specific evidentiary burden, much less a high one. Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard."). In the past, the Federal Circuit has found exceptionality in instances of "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." Wedgetail, Ltd., 576 F.3d at 1304-05 (collecting cases).[2]

NCR argues that its case is "exceptional" because Capsec engaged in litigation misconduct. NCR asserts that Capsec produced "sham" licensing agreements "created for the purpose of this litigation," which constituted an attempt to "artificially inflate the value of [Capsec's] claims" and thus perpetuate "a fraud on NCR and the Court." ([152] at 12-13). NCR further argues that Capsec acted "unreasonably throughout" the litigation, including because it

---

[2] The Supreme Court in Octane held that the Federal Circuit's interpretation of "litigation misconduct" as including only independently sanctionable conduct was "overly rigid." 134 S.Ct at 1756. The Supreme Court held, instead, that a party's unreasonable conduct—while not necessarily independently sanctionable—may nonetheless be so exceptional to justify an award of fees. Id. Although the Eleventh Circuit has yet to apply, or further clarify, this standard, the Court here holds that Capsec's conduct was neither independently sanctionable, as provided under the Federal Circuit's test, or unreasonable as suggested by the Supreme Court in Octane.

6

advanced "entirely new infringement theories" at the Markman hearing without complying with Local Patent Rule 4.1(b).  (Id. at 14).  NCR finally argues that the Court can infer misconduct from the fact that Capsec's former counsel moved to withdraw because, in part, Capsec "persist[ed] in a course of action involving Counsel's services that Counsel believe[d] [wa]s fraudulent."  ([99.1] ¶ 2).  NCR points out that when Capsec opposed the motion to withdraw, its then-counsel replied that they were "prepared to show evidence, *in camera* . . . including support for, among other[] activities, misrepresentations made by Capital Security to Counsel and fraud."  ([102] at 2-3).

NCR next argues that its case is "exceptional" because Capsec's claims were "objectively baseless" from the inception of the litigation.  NCR asserts that "[a]ny meaningful pre-suit investigation would have revealed that NCR ATMs do not practice key elements of the asserted claims."  ([152] at 17).  NCR further alleges that NCR sent Capsec several letters explaining how its technology worked, offered to meet in person to demonstrate its products, and provided a declaration from an NCR employee that refuted Capsec's claims.  (Id. at 17-18).  NCR states that the Court's "thorough[] reject[ion] [of] Capsec's constructions" at the Markman hearing, Capsec's continued reference to software not used in NCR's ATMs, and Capsec's acknowledgment that its claims relating to the '625 patent

7

"were not important" are further evidence that its claims were "objectively baseless" from the start. (Id. at 16-20).

Plaintiff argues, in contrast, that it did not engage in litigation misconduct by producing and citing the two licensing agreements NCR calls "sham" agreements.[3] Plaintiff asserts that no evidence of fraud exists, and that the licensing agreements were "obviously relevant to this lawsuit under Fed. R. Civ. P. 26(b)(1)," and "Capsec was therefore *required* to produce the license agreements and could not

---

[3] Plaintiff also argues that any ruling on the Motion for Attorney's Fees would be premature because the merits of the infringement claim are currently the subject of a pending appeal and thus it remains unclear which party is the "prevailing party" for purposes of 35 U.S.C. § 285. ([164] at 5-7). NCR argues that because the Court entered final judgment of non-infringement under Rule 54(b) of the Federal Rules of Civil Procedure it is the "prevailing party" for purposes of Section 285. ([174] at 4). A court is not required to refrain from awarding attorney's fees until a party exhausts its appeal. See, e.g., Kilopass Technology, Inc. v. Sidense Corp, 738 F.3d 1302, 1308 (Fed. Cir. 2013) ("While that appeal was pending, Sidense filed a motion in the district court for an award of attorneys' fees pursuant to 35 U.S.C. § 285."); Highmark, Inc. v. Allcare Health Management Systems, Inc., 577 F. App'x 995, 995 (Fed. Cir. 2014) ("During the pendency of the appeal, [the plaintiff] moved the district court for . . . an award of attorney's fees under section 285 of the Patent Act."). Further, a party is not required to succeed on its appeal before it is deemed a "prevailing party." Shum v. Intel Corp., 629 F.3d 1360, 1368 (Fed. Cir. 2010) ("To be a 'prevailing party,' our precedent requires that the party have received at least some relief on the merits. That relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party."). The Court therefore finds it is not premature to consider NCR's Motions at this time, and that, for purposes of this Order, it assumes NCR is a "prevailing party" under 35 U.S.C. § 285.

have committed misconduct by simply doing so." ([164] at 15). Capsec also disclaims that it "improperly relied on" the licensing agreements. (Id.). Capsec states that it never served an expert report relying on the agreements or otherwise substantively relied on them before new counsel "explicitly disavowed reliance on [them] as 'lack[ing] sufficient probative value to be meaningfully relevant to a reasonable royalty analysis for patent damages against a large volume manufacturer of ATM machines.'" (Id. at 15-16). Plaintiff further states that NCR has not identified any "false statements of fact," "misleading information," or "falsified documents," and has presented no evidence that the licensing agreements were "not what they appear to be, were falsified, or otherwise contain[ed] false statements of fact." (Id.). Plaintiff also refutes that it violated Local Patent Rule 4.1(b) by submitting "entirely new infringement theories" at the Markman hearing. (Id. at 16-17). Plaintiff argues finally that its infringement claims were reasonable and supported by the evidence. ([164] at 17-21).

Here, the Court cannot conclude that NCR has shown that this case is exceptional.[4] Although the Court does not take lightly Capsec's former counsel's

---

[4] Even if the Court refrained from articulating the reasons supporting denial of attorney's fees here, the Federal Circuit has held that, "[b]ecause of the high level of deference owed to district courts on this issue and the limited circumstances that could qualify as exceptional, [the Federal Circuit] has not imposed a blanket

9

recusal based, in part, on perceived fraudulent conduct, the Court does not believe sufficient evidence exists justifying an award of attorney's fees under 35 U.S.C. § 285. NCR has failed to present any real evidence that Plaintiff acted in an unreasonable manner in litigating the case. NCR provides only vague assertions and, at best, circumstantial evidence that Capsec was negligent or slipshod in presenting additional evidence at the <u>Markman</u> hearing or producing the two licensing agreements NCR deems "sham" contracts. NCR, for example, quotes the following email from Capsec's former counsel regarding the licensing agreements to support its claim that Capsec engaged in misconduct: "I do not like the other license agreement. I think the use of 4.75% for each agreement reflects a lack of thoughtfulness on the part of the licensee in truly considering the benefit and utility of the technology." ([152.8] at 12). Upon further review, and considering the full context of the email chain, this remark is part of a lengthier conversation about a business decision; it is not, as NCR attempts to argue, evidence that Capsec acted in an unreasonable manner.

That NCR prevailed on the claim construction and summary judgment

---

requirement that a district court provide its reasoning in attorney fee cases." <u>Wedgetail Ltd.</u>, 576 F.3d at 1305-06. "Instead, [the Federal Circuit] ha[s] held only that a statement of the district court's reasoning is generally necessary to enable review when an attorney fees motion is granted. <u>Id.</u>

motions is insufficient to demonstrate Plaintiff pursued the case without a reasonable belief that it had merit.  "[It] is the 'substantive *strength* of the party's litigating position' that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position."  SFA Systems, LLC v. Newegg Inc., 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S.Ct. 1749, 1756 (U.S. 2014).  Capsec, for example, asserts it believed its claim construction positions were reasonable and "NCR would infringe if Capsec's claim construction positions had been adopted."  ([164] at 17).  The Court cannot find, and NCR has not advanced sufficient evidence, to show Capsec's claim construction proposals, or other claims for that matter, were so objectively unreasonable they amounted to an "exceptional" case.

The Court concludes this case cannot be deemed "exceptional" as defined by the U.S. Supreme Court and the Federal Circuit, and thus denies NCR's Motions for Attorney's Fees and Additional Attorney's with respect to the requested fees under 35 U.S.C. § 285.

    B.    Attorney's Fees Pursuant to 28 U.S.C. § 1927

Title 28 § 1927 states:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be

> required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Eleventh Circuit has interpreted the statute to impose three essential requirements for an award of sanctions: (1) "the attorney must engage in 'unreasonable and vexatious' conduct"; (2)" that 'unreasonable and vexatious' conduct must be conduct that 'multiplies the proceedings'"; and (3) "the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.*, the sanction may not exceed the 'costs, expenses, and attorney's fees reasonably incurred because of such conduct.'" Amlong & Amlong, P.A. v. Denny's Inc, 500 F.3d 1230, 1239 (11th Cir. 2007) (quoting Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997). The Eleventh Circuit has "consistently held that an attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" Id.; see also Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir.2003) ("'Bad faith' is the touchstone."); Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir.1991).

The determination of bad faith hinges upon the attorney's objective conduct, not the subjective intent of the attorney. Amlong & Amlong, 500 F.3d at 1239. Subjective intent, however, is not entirely irrelevant. The Eleventh Circuit has stated:

> [A] district court may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings. That is not to say the attorney's purpose or intent is irrelevant. Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be "unreasonabl[e] and vexatious[ ]" if it is done with a malicious purpose or intent.

Id. at 1241. Moreover, "[n]egligent conduct, standing alone, will not support a finding of bad faith under § 1927—that is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney. Id.; see also Schwartz, 341 F.3d at 1225.

Here, and considering the Court's discussion regarding NCR's request for attorney's fees under 35 U.S.C. § 285, the Court cannot conclude that Plaintiff's conduct warrants sanctions under 28 U.S.C. § 1927. At most, Plaintiff's counsel was negligent in understanding the application and underlying function of the Patents-in-Suit, presenting additional evidence at the Markman hearing where it perhaps should not have, or failing to communicate appropriately with opposing counsel. Negligent conduct, alone, however, is insufficient to show bad faith. The Court is unable to find, on the record before it, that the claim is frivolous, or that any party acted in bad faith or in a manner that unreasonably or vexatiously multiplied the proceedings in this action.

13

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant NCR Corporation's Motion for Attorney's Fees [152] and Motion for Additional Attorney's Fees and Costs [198] are **DENIED**.[5]

**IT IS FURTHER ORDERED** that Defendant NCR Corporation's Motion for Leave to File Matters Under Seal [200] is **GRANTED**.

**SO ORDERED** this 5th day of January, 2018

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Having found that attorney's fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927 are not warranted, the Court declines to exercise its "inherent authority" to grant NCR attorney's fees incurred in defending the action.